Sheriff Bill McGEE, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 2:94–CV–67PS.

United States District Court,
S.D. Mississippi,
Hattiesburg Division.

June 3, 1994.

Shirlee M. Fager Baldwin, Shirlee Fager Baldwin, Hattiesburg, MS, Stephen P. Halbrook, Stephen P. Halbrook, Fairfax, VA, for plaintiff.

George L. Phillips, U.S. Attorney's Office, Jackson, MS, Stephen R. Graben, U.S. Attorney's Office, Biloxi, MS, Sandra M. Schraibman, Michael Sitcov, Pamela J. Eppli, Robert Van Kirk, Dennis G. Linder, Frank W. Hunger, U.S. Dept. of Justice, Civ. Div., Washington, DC, for defendant.

### MEMORANDUM OPINION

PICKERING, District Judge.

This matter is before the Court on Plaintiff's Complaint seeking a declaratory judgment that the Brady Handgun Violence Prevention Act (Brady Bill) as an amendment to the Gun Control Act of 1968 is unconstitutional and for a permanent injunction prohibiting the Defendant's enforcement thereof. This Court previously denied Plaintiff's request for a preliminary injunction, 849 F.Supp. 1147 (1994).

At the hearing on Plaintiff's request for a preliminary injunction both parties agreed that this Court had before it all evidence needed to rule on the merits of the Complaint. At the request of the Court, the parties submitted additional briefs. The Court has carefully considered the pleadings, evidence, arguments of counsel and the briefs submitted.[1]

Plaintiff now seeks to amend to bring in Forrest County, Mississippi, as an additional party plaintiff. This is apparently done in response to Defendant's strenuous argument that Plaintiff has no standing or capacity to bring this action. Since Plaintiff's Motion to Amend comes after the parties have submitted this matter to the Court for decision, bringing in an additional party at this stage of the proceeding is inappropriate. Accordingly, Plaintiff's Motion to Amend to bring in a third party plaintiff is denied. *See* Rule 20, Fed.R.Civ.P.

This Court in ruling on the request for a preliminary injunction noted:

> Determining what is or is not in the best interest of the United States and its people under the commerce clause of the Constitution is a legislative function, not a judicial function ... Consequently, this Court has no jurisdiction, no authority, no power to question whether the Brady Bill is good policy or bad policy. That is simply not a function of the Courts.

*Id.* at page 1148.

However, Plaintiff argues that the Brady Bill is unconstitutional. That is a proper question for the courts. The portions of the Brady Bill primarily in question (18 U.S.C. § 922(s)(2) and § 924(a)(5)) are as follows:

> A chief law enforcement officer to whom a transferror has provided notice pursuant to paragraphs (1)(A)(i)(III) *shall* make a reasonable effort to ascertain within five business days whether receipt or possession would be in violation of the law, *including research in whatever* state and local *record keeping systems are available* and in a national system designated by the Attorney General.

18 U.S.C. § 922(s)(2) (emphasis added).

> Whoever knowingly violates Subsection (s) and (t) of Section 922 shall be fined not more than $1,000, imprisoned for not more than one year, or both.

1. The Center to Prevent Handgun Violence, Major Cities Chiefs of Police, International Association of Chiefs of Police, National Association of Police Organizations, Fraternal Order of Police, Police Foundation, Federal Law Enforcement Officers Association, Police Executive Research Forum, National Troopers Coalition, National Organization of Black Law Enforcement Executives, and International Brotherhood of Police Organizations filed an amici curiae brief supporting the position of the Defendant United States of

18 U.S.C. § 924(a)(5) (emphasis added).[2]

Primarily, Plaintiff raises two objections to the Brady Bill. First, Plaintiff argues that the Act is contrary to Article I, Section 8 and the Tenth Amendment to the United States Constitution in that it "commandeers" a state sheriff to administer a federal act regulating gun purchases. Secondly, Plaintiff contends that the penalty section of the Brady Bill violates the due process clause of the Fifth Amendment in that it is unconstitutionally vague.

As this Court noted in ruling on the request for a preliminary injunction, the Court must first determine the question of standing, including the Plaintiff's capacity to sue, before it reaches the constitutional issues.

## I. STANDING TO CHALLENGE THE PENALTY SECTION OF BRADY.

In order to have standing to challenge the constitutionality of a statute, one must be exposed to actual injury, or to a threat of actual injury, and relief from the injury must be likely to follow from a favorable decision. *See Allen v. Wright*, 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). There must be an actual "case" or "controversy." *Id.*, 468 U.S. at 750, 104 S.Ct. at 3324, 82 L.Ed.2d at 569. The evidence and stipulations before this Court establish that Defendant has interpreted the penalty section of the Brady Bill as not applicable to chief law enforcement officers (CLEO's) for failure to comply with Brady's ascertainment

America. The briefs of amici curiae have also been considered by the Court.

2. 18 U.S.C. § 922(s)(6)(B) requires the CLEO to destroy any form forwarded to him by a gun dealer within twenty days, unless he has determined that providing a gun to a prospective purchaser would be violative of the law. 18 U.S.C. § 922(s)(6)(C) provides if a CLEO determines that a proposed purchase of a handgun is illegal, then the CLEO must within twenty days after request give a written reason as to why a prospective handgun purchaser is ineligible for such purchase.

3. This Court believes that Defendant is correct in its interpretation of 18 U.S.C. § 924(a)(5), as amended by the Brady Act. The doctrine of lenity (*U.S. v. Thompson/Center Arms Co.*, —— U.S. ——, 112 S.Ct. 2102, 119 L.Ed.2d 308 (1992) and *U.S. v. Bass*, 404 U.S. 336, 347, 92 S.Ct. 515, 522, 30 L.Ed.2d 488 (1972)) as well as

and background check provisions. (18 U.S.C. § 922(s)(2)). Accordingly, Plaintiff is not under any danger of criminal prosecution regardless of whether he does or does not make the required background check and ascertainment as to legality. Plaintiff can demonstrate no actual injury or threatened actual injury in regard to the penalty section, 18 U.S.C. § 924(a)(5). Thus Plaintiff does not have standing to challenge the constitutionality of 18 U.S.C. § 924(a)(5), as amended by Brady.[3]

## II. STANDING TO CHALLENGE THE ASCERTAINMENT AND RECORDS SEARCH PROVISION OF BRADY.

The second issue pertaining to standing is not as easily disposed of. Under 18 U.S.C. § 922(s)(2) the sheriff is directed ("shall") to "make a reasonable effort to ascertain . . . whether receipt or possession would be in violation of the law, *including* research in *whatever* . . . record keeping systems are available . . ." (emphasis added).

The Defendant argues that the sheriff has no standing to challenge this section of Brady because (1) he has no capacity to sue, and (2) he is not threatened with actual injury.

The capacity of a state official to sue "shall be determined by the law of the state in which the district court is held . . ." Rule 17(b), Fed.R.Civ.P. Further, as amici curiae point out, in Mississippi, the state attorney

the principle that when a statute is susceptible to two interpretations, one of which is constitutional and the other unconstitutional, the interpretation which is constitutional should be utilized, unless such construction is plainly contrary to Congressional intent (*DeBartolo v. Florida Gulf Coast Building and Const. Trades Council*, 485 U.S. 568, 575, 108 S.Ct. 1392, 1397, 99 L.Ed.2d 645 (1988)) would require this Court to construe this section as imposing no criminal exposure upon Plaintiff, if that issue were before the Court. Further, since Defendant contends in this case that this section exposes Plaintiff to no criminal penalty, Defendant would be judicially estopped from prosecuting Plaintiff under the penalty section. All of this buttresses the Court's conclusion that Plaintiff is not threatened with any actual injury as to the criminal penalty section of Brady and thus has no standing to raise this issue.

general "is given the *sole* power to bring or defend a lawsuit on behalf of a state agency, the subject matter of which is of statewide interest ..." Miss.Code Ann. § 7–5–1 (1972) (emphasis added).[4]

Neither party has cited any case directly on point decided by the Mississippi Supreme Court. The cases are clear that the appropriate body to bring an action involving counties is the board of supervisors of such county. However, that is not the situation before this Court. Brady directs sheriffs (as chief law enforcement officers) to ascertain if obtaining a gun is in violation of the law, including checking whatever records are available. This directive is not to any other public official other than a CLEO. This directive is not to the county. It is not to the attorney general. It is not to any other state agency or to any federal agency.

■ While it is true that cases against the "sheriff's department" are routinely dismissed by this Court because the county is the proper party, sheriffs are repeatedly sued before this Court by inmates challenging the conditions of their confinement and other civil rights violations under the Constitution of the United States.

It would be anomalous indeed if Congress can direct a sheriff to take specific action; if Congress can provide that a sheriff may be sued in civil rights actions; and if sheriffs can be sued for deprivation of constitutional rights by inmates; but a sheriff cannot bring a suit to declare unconstitutional an action of Congress that directly impacts upon such sheriff, and impacts upon no other state, county or federal official.

■ Since there are no Mississippi cases directly on point this Court has the responsibility of making an *Erie* guess as to what the Mississippi Supreme Court would do if it were confronted with this question. This Court feels confident that the Mississippi Supreme Court would decide that under the facts of a case such as this that a sheriff does have the legal capacity to bring an action such as this. Sheriff Bill McGee has a "per-

sonal stake in the outcome of this litigation." *See Board of Education v. Allen,* 392 U.S. 236, 241, n. 5, 88 S.Ct. 1923, 1925, n. 5, 20 L.Ed.2d 1060 (1968). Consequently this Court rules that the sheriff has capacity to bring this suit. However, since the Attorney General is the appropriate official to bring action of statewide import, this Court concludes that this action will be applicable to this sheriff only.

As to actual injury, the Plaintiff (any CLEO) must make a reasonable effort to ascertain the legality of a proposed handgun purchase and must check "whatever" records "are available" or face civil action for injunctive relief for failure to make such a check. Under this language the sheriff is threatened with actual injury under 18 U.S.C. § 922(s). He could be enjoined to follow the mandate of Brady as enacted by Congress. Further, since he is sworn to uphold the law, his failure to make the ascertainment and record check or to challenge the constitutionality of the Act, could result in the sheriff violating his oath of office. The voters could hold him accountable for this. That is also a threat of actual injury.

**III. IS THE BRADY BILL MANDATE THAT LOCAL SHERIFFS MUST ASCERTAIN IF A PROPOSED HANDGUN PURCHASE IS LEGAL AND PERFORM CERTAIN BACKGROUND CHECKS UNCONSTITUTIONAL?**

■ This Court is mindful that the U.S. Supreme Court has recognized various programs "of cooperative federalism." *See Hodel v. Virginia Surface Mining and Reclamation Ass'n, Inc.,* 452 U.S. 264, 289, 101 S.Ct. 2352, 2367, 69 L.Ed.2d 1 (1981). This Court likewise recognizes that the area of gun control could be an appropriate area for "cooperative federalism" if Congress should so determine. Law enforcement officials are repeatedly before this Court in cases as to which county, state and federal authorities have cooperated, one with the other, in the enforcement of drug laws and laws involving

---

**4.** Although a sheriff of a county is not a state agency, nevertheless, this Court feels that this statute is instructive that the Attorney General should be the one to bring any action having statewide import.

the illegal possession, sale or purchase of guns. Such cooperative efforts are not novel. They are currently being carried out quite extensively. But Congress, in the Brady Bill, did not give local sheriffs the option of cooperating with federal officials. Congress mandated and directed the sheriff to "make a reasonable effort to ascertain" the legality of a proposed handgun purchase, *including* research in "whatever" records "are available." Since the CLEO is only directed to make "a reasonable effort," defendant attempts to interpret the word "shall" as not being mandatory. However, Congress defeated an amendment that would have changed the word "shall" to "may." Further indicative of the fact that local CLEO's must take some action is in the use of the word "including." The CLEO must make a "reasonable effort" to ascertain, "including" a record check. Thus, at a bare minimum a CLEO must check "whatever" records "are available."

In *New York v. United States,* ── U.S. ──, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992), the Supreme Court discussed what Congress can and cannot do insofar as directing state and local officials to carry out federal regulatory programs and policies under the Tenth Amendment. In that case the Court in a very thorough opinion stated:

> The constitutional question is as old as the Constitution: it consists of discerning the proper division of authority between the federal government and the states.

── U.S. at ──, 112 S.Ct. at 2414, 120 L.Ed.2d at 133.

> Being an instrument of limited and enumerated powers it follows irresistibly that what is not conferred, is withheld and belongs to the state authorities ... the states unquestionably do retai[n] a significant measure of sovereign authority ...

*Id.,* 112 S.Ct. at 2417, 120 L.Ed.2d at 137.

> As an initial matter, Congress may not simply "commandee[r] the legislative processes of the States' by directly compelling them to enact and enforce a federal regulatory program."

*Id.,* 112 S.Ct. at 2420, 120 L.Ed.2d at 140 (citations omitted).

> This "Court never has sanctioned explicitly a federal command to the states to promulgate and enforce laws and regulations."

*Id.,* 112 S.Ct. at 2420, 120 L.Ed.2d at 141.

> ... Congress has crossed the line distinguishing encouragement from coercion.

*Id.,* 112 S.Ct. at 2427, 120 L.Ed.2d at 149.

> Either type of federal action would "commandeer" state governments into the service of federal regulatory purposes and for this reason would be inconsistent with the Constitution's division of authority between federal and state governments.

*Id.,* 112 S.Ct. at 2427, 120 L.Ed.2d at 150.

> Where a federal interest is sufficiently strong to cause Congress to legislate, it must do so directly; it may not conscript state governments as its agents.

*Id.,* 112 S.Ct. at 2429, 120 L.Ed.2d at 152.

> States are not mere political subdivisions of the United States Government or are neither regional officers nor administrative agencies of the Federal Government....

*Id.,* 112 S.Ct. at 2434, 120 L.Ed.2d at 158.

Insofar as this case is concerned, the most pointed holding of the Court in *New York,* was that *"the Federal Government may not compel the states to ... administer a federal regulatory program."* (emphasis added). *Id.,* 112 S.Ct. at 2434, 120 L.Ed.2d at 158.

■ Sheriff McGee testified that he did not feel that he had available sufficient records to make a reasonable ascertainment of the legality of a proposed gun check, but that checking the records which are available to him required, on average, about one and a half hours per day. Even though this Court does not feel that the responsibilities placed upon local sheriffs by Brady is particularly onerous, nevertheless it does transgress the "proper division of authority between the federal government and the states" under *New York v. U.S.,* ── U.S. at ──, 112 S.Ct. at 2414, 120 L.Ed.2d at 133, and is more than

de minimis. *See FERC v. Mississippi,* 456 U.S. 742, 102 S.Ct. 2126, 72 L.Ed.2d 532 (1982).

Accordingly, this Court finds that Congress cannot direct and compel local sheriffs to carry out the provisions of the Brady Bill as is done in 18 U.S.C. § 922(s)(2). *See also Sheriff/Coroner Jay Printz v. United States of America,* 854 F.Supp. 1503 (D.Mont.1994) interpreting the same act and reaching the same conclusion as this Court.

■ As much information exchange as currently goes on between federal, state and local law enforcement officials, this Court does not feel that simply requiring a CLEO to destroy forms provided to the CLEO by a gun dealer as to handgun purchases (18 U.S.C. § 922(s)(6)(B)) implicates the Tenth Amendment.[5] Likewise, 18 U.S.C. § 922(s)(6)(C) which requires a CLEO to give a reason why a gun purchase is turned down will not become mandatory on any CLEO unless he has first voluntarily decided to cooperate and comply with 18 U.S.C. § 922(s)(2).

The Brady Bill brings into conflict differing views as to the Second Amendment's "right of the people to keep and bear arms" and views on the responsibility of government to protect its citizens from violence in a society that is becoming increasingly more violent and where fear of violence is becoming the greatest fear of our people. This lawsuit, however, as noted by Judge Lovell, in *Printz v. U.S., supra,* does not implicate the Second Amendment. This lawsuit involves only the Tenth Amendment and Article I, Section 8 of the Constitution.[6]

## IV. SEVERABILITY.

■ The only other question which this Court must consider is the question of severability. That issue was likewise addressed in *New York, supra,* as well as in the case of *Alaska Airlines, Inc. v. Brock,* 480 U.S. 678, 684, 107 S.Ct. 1476, 1480, 94 L.Ed.2d 661 (1987). Unless it is "evident" that Congress would not have adopted the remainder of the act, if the unconstitutional part had been omitted, "the invalid part may be dropped if what is left is fully operative as law." *Alaska Airlines,* 480 U.S. at 684, 107 S.Ct. at 1480.

■ When Congress adopts a severability clause there is a presumption that the unconstitutional part of the act is severable. *Alaska Airlines,* 480 U.S. at 686, 107 S.Ct. at 1481. The Brady Bill is an amendment to the Gun Control Act, which has a severability clause. 18 U.S.C. § 928. Thus, there is a presumption in favor of severability.

■ Deleting Section 922(s)(2) obviously will weaken the Brady Bill and eliminate a part of the total Congressional statutory scheme for dealing with handgun purchases. But it does not follow that Congress would not have enacted the balance of the Act without mandating that CLEO's make "a reasonable effort" to ascertain the legality of proposed handgun purchases. Neither does it follow that the balance of the Act is not "fully operative" or functional without § 922(s)(2). If only § 922(s)(2) is declared unconstitutional, there is still a five-day waiting period, purchasers of handguns must still provide certain information to gun dealers, which in turn must be provided to the chief local law enforcement officer, who then will have the option "to cooperate" or "not cooperate" with federal officials in carrying out the provisions of Brady. The Court notes that this is merely a temporary or "stop gap" measure that remains in place only until a national instant criminal background check system is developed. *See* 18 U.S.C. § 922(t).

Plaintiff has not overcome the presumption that Congress would have passed Brady even without § 922(s)(2). The balance of Brady is "fully operational" or functional without § 922(s)(2).

## V. CONCLUSION.

The Court concludes that 18 U.S.C. § 922(s)(2) is an unconstitutional mandate

---

5. Such requirement is clearly de minimis. *See FERC v. Mississippi,* 456 U.S. 742, 102 S.Ct. 2126, 72 L.Ed.2d 532 (1982).

6. Plaintiff also raised a Fifth Amendment due process question, but he has no standing on that issue as already pointed out.

328

and directive from Congress to local chief law enforcement officers that exceeds the power granted under Article I, Section 8 and that contravenes the Tenth Amendment to the United States Constitution. Since Sheriff Bill McGee has standing to bring this lawsuit only insofar as it affects him in his official capacity and since he has no standing to bring any action on behalf of any other Mississippi law enforcement officials, this decision is limited in its application to Sheriff Bill McGee only. All other sections of the Brady Handgun Violence Prevention Act being severable under applicable case law, only 18 U.S.C. § 922(s)(2) is hereby declared unconstitutional and void and the United States is permanently enjoined from enforcing the provisions thereof against Sheriff Bill McGee, and it is so ordered.

A separate judgment will be entered in accordance with Rule 58, Federal Rules of Civil Procedure.

SO ORDERED AND ADJUDGED.